# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
| | : | |
| **ERIC GUNDRUM and MICHAEL KING,** | : | **Civil Action No.: 3:16-cv-00369-WMC** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | **Collective Action Pursuant to 29 U.S.C. §** |
| **Plaintiffs,** | : | **216(b)** |
| | : | |
| **v.** | : | |
| | : | **Jury Trial Demanded** |
| **CLEVELAND INTEGRITY SERVICES,** | : | |
| **INC.,** | : | |
| | : | |
| **Defendant.** | : | |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EXPEDITED MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     PROCEDURAL HISTORY ........................................................................................ 3

III.    FACTUAL BACKGROUND ...................................................................................... 3

        A.    CIS Is A Third Party Inspection Company That Employs Similarly Situated
              Inspectors ......................................................................................................... 3

        B.    All Inspectors Are Subject To A Uniform Day Rate Compensation Policy ........... 4

              1.    Inspectors Are Paid On A Day Rate Basis, Regardless of Their Job Title,
                    Project Or Geographic Location ................................................................. 4

              2.    All Inspectors Are Paid by the Number of Days Worked, Without Regard
                    to Actual Hours Worked ........................................................................... 5

        C.    All Inspectors Perform Similar Job Duties ............................................................ 6

        D.    All Inspectors Routinely Work Far In Excess of Forty Hours Per Week ............... 6

        E.    CIS' Pay Plan Violates The FLSA ....................................................................... 7

IV.     ARGUMENT ........................................................................................................... 11

        A.    The Court Should Conditionally Certify The FLSA Collective of Inspectors For
              the Purpose of Facilitating Notice ...................................................................... 11

              1.    This Court Applies A Two-Stage Certification Process .......................... 11

              2.    Plaintiffs' Burden is Minimal at the Notice Stage .................................. 13

              3.    Plaintiffs' FLSA Claim Should Be Conditionally Certified .................... 17

              4.    Day Rate Cases Like This One Are Appropriate And Well-Suited For
                    Conditional Certification ....................................................................... 18

        B.    CIS' Forced Arbitration Agreement Should Not Preclude Notice ....................... 20

        C.    Plaintiffs' Proposed Notice Is Accurate And Informative, And The Notice Plan
              Should Be Approved ......................................................................................... 22

V.      CONCLUSION ....................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Wis. Bell, Inc.*,
 No. 08-C-280, 2008 WL 2690716 (E.D. Wis. July 2, 2008) .........................................2, 12, 17

*Allen v. City of Chic.*,
 No. 10-cv-3183, 2013 WL 146389 (N.D. Ill. Jan. 14, 2013)............................................14, 15

*Amrhein v. Regency Mgmt. Servs., LLC*,
 No. SKG-13-1114, 2014 WL 1155356 (D. Md. Mar. 20, 2014) ............................................21

*Austin v. CUNA Mut. Ins. Soc.*,
 232 F.R.D. 601 (W.D. Wis. 2006) (Crabb, J.) ............................................................1, 12, 13

*Beall v. SST Energy Corp.*,
 No. 15-cv-01741-MSK-NYW, 2016 WL 286295 (D. Colo. Jan. 25, 2016) ..........................15

*Berndt v. Cleary Bldg. Corp.*,
 No. 11-cv-791-WMC, 2013 WL 3287599 (W.D. Wis. Jan. 25, 2013) (Conley,
 J.)........................................................................................................................................ *passim*

*Betancourt v. Maxim Healthcare Servs., Inc.*,
 No. 10-C-4763, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011) ...............................................15

*Bitner v. Wyndham Vacation Resorts, Inc.*,
 301 F.R.D. 354 (W.D. Wis. July 25, 2014) (Conley, J.)............................................12, 13, 24

*Bland v. Calfrac Well Servs. Corp.*,
 No. 2:12–cv–01407, 2013 WL 4054594 (W.D. Pa. Aug. 12, 2013) ......................................16

*Bowman v. Doe Run Res. Corp.*,
 No. 4:13-cv-2519-CDP, 2014 WL 3579885 (E.D. Mo. July 21, 2014)..................................21

*Bradley v. The Arc of NW Ind., Inc.*,
 No. 2:14-cv-204, 2015 WL 2189284 (N.D. Ind. May 11, 2015)............................................12

*Butler v. DirectSAT USA, LLC*,
 876 F. Supp. 2d 560 (D. Md. 2012) .......................................................................................23

*Casarotto v. Expl. Drilling, Inc.*,
 2015 WL 8780050 (D. Mont. Dec. 15, 2015)...................................................................16, 19

*Casarotto v. Expl. Drilling, Inc.*,
 No. 15-cv-41-BLG-SPW-CSO, 2015 WL 6080755 (D. Mont. Oct. 15, 2015)...........16, 18, 19

*Cramer v. Bank of Am., N.A.*,
    No. 12-C-8681, 2013 WL 6507866 (N.D. Ill. Dec. 12, 2013)................................12

*Cranney v. Carriage Servs., Inc.*,
    No. 2:07-cv-1587-RLH-PAL, 2008 WL 608639 (D. Nev. Feb. 29, 2008) ...........................23

*Davis v. NovaStar Mortg., Inc.*,
    408 F. Supp. 2d 811 (W.D. Mo. 2005) .................................................................21

*Davis v. Westgate Planet Hollywood Las Vegas, LLC*,
    No. 2:08-cv-00722-RCJ-PAL, 2009 WL 4019424 (D. Nev. Nov.19, 2009)..........................23

*Defining & Delimiting the Exemptions for Exec., Admin., Prof'l, Outside Sales &
    Computer Employees*,
    69 FR 22,122 - 43 (Apr. 23, 2004) ....................................................................10

*In re Deloitte & Touche, LLP Overtime Litig.*,
    No. 11-cv-2461-RMB-THK, 2012 WL 340114 (S.D.N.Y. Jan. 17, 2012) ...........................23

*Denney v. Lester's, LLC*,
    No. 4:12-cv-377-JCH, 2012 WL 3854466 (E.D. Mo. Sept. 5, 2012).....................................23

*Espenscheid v. DirectSat USA, LLC*,
    No. 09–cv–625–BBC, 2010 WL 2330309 (W.D. Wis. June 7, 2010) (Crabb,
    J.)......................................................................................................................12

*Fenley v. Applied Consultants, Inc.*,
    No. 15-cv-259-MRH (W.D. Pa.) (Jun. 17 Final Approval Order) (Exhibit C) ................2, 3, 4

*Fenley v. Wood Grp. Mustang, Inc.*,
    No. 2:15-cv-326, -- F. Supp. 3d --, 2016 WL 1059681 (S.D. Ohio Mar. 17,
    2016) .................................................................................................... *passim*

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*,
    No. 11-cv-592, 2013 WL 3287634 (W.D. Wis. Mar. 21, 2013) (Conley, J.)...................12, 24

*Freeman v. Total Sec. Mgmt-Wisc., LLC*,
    No. 12-cv-461-WMC, 2013 WL 4049542 (W.D. Wis. Aug. 9, 2013) (Conley,
    J.)..................................................................................................................12, 24

*Guzman v. Three Amigos SJL Inc.*,
    117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015)...........................................................21

*Hart v. Sandridge Energy, Inc.*,
    No. CIV–14–178–R, 2014 WL 2983358 (W.D. Okla. July 1, 2014) ......................................16

*Hatton v. Cablecom, LLC*,
    No. 14-cv-1459, 2015 WL 4113441 (E.D. Wis. July 8, 2015)................................12

*Hively v. Allis-Chalmers Energy, Inc.*,
  No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) .....................................................16

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165, 110 S. Ct. 482 (1989) ...............................................................................11, 22

*Houston v. URS Corp.*,
  591 F. Supp. 2d 827 (E.D. Va. 2008) ..................................................................................17

*Howard v. Cetrinex, LLC*,
  No. 15-cv-9918-JWL, 2016 WL 1701818 (D. Kan. Apr. 28, 2016) .......................................15

*Jirak v. Abbott Lab., Inc.*,
  566 F. Supp. 2d 845 (N.D. Ill. 2008) .................................................................12, 13, 14, 15

*Johnson v. Am. Airlines, Inc.*,
  531 F. Supp. 957 (N.D. Tex. 1982) .....................................................................................24

*Kelly v. Bluegreen Corp.*,
  256 F.R.D. 626 (W.D. Wis. 2009) (Crabb, J.) ...........................................................12, 14, 22

*Larsen v. Clearchoice Mobility, Inc.*,
  No. 11-C-1701, 2011 WL 3047484 (N.D. Ill. July 25, 2011) .................................................13

*Lewis v. Epic Sys. Corp.*,
  No. 15-2997, --- F.3d ---, 2016 WL 3029464 (7th Cir. May 26, 2016)...................................20

*Lewis v. Huntington Nat'l Bank*,
  No. C2-11-cv-0058, 2011 WL 8960489 (S.D. Ohio June 20, 2011)........................................23

*Lewis v. Wells Fargo & Co.*,
  669 F. Supp. 2d 1124 (N.D. Cal. 2009) ...............................................................................23

*Maddy v. Gen. Elec. Co.*,
  59 F. Supp. 3d 675, 685 .....................................................................................................21

*Mateos v. Select Energy Servs., LLC*,
  977 F. Supp. 2d 640 (W.D. Tex. 2013)................................................................................16

*May v. E&J Well Serv., Inc.*,
  No. 14– cv–00121–RBJ, 2014 WL 2922655 (D. Colo. June 27, 2014) ..................................16

*Phelps v. MC Comm'cs, Inc.*,
  No. 2:11-cv-00423-PMP-LRL, 2011 WL 3298414 (D. Nev. Aug. 1, 2011) ..........................23

*Pivonka v. Bd. of County Comm'rs*,
  No. 04-cv-2598-JWL, 2005 WL 1799208 (D. Kan. July 27, 2005) .......................................15

*Pontius v. Delta Fin. Corp.*,
No. 04-1737, 2005 WL 6103189 (W.D. Pa. June 24, 2005) ...................................................21

*Racey v. Jay-Jay Cabaret, Inc.*,
No. 15-cv-8228, 2016 WL 3020933 (S.D.N.Y. May 23, 2016) ..............................................21

*Recinos-Recinos v. Express Forestry, Inc.*,
233 F.R.D. 472 (E.D. La. 2006)................................................................................................24

*Renfro v. Spartan Comput. Servs., Inc.*,
243 F.R.D. 431 (D. Kan. 2007)................................................................................................15

*Romero v. La Revise Assocs., L.L.C.*,
968 F. Supp. 2d 639 (S.D.N.Y. 2013).....................................................................................20

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) .............................................................................................24

*Rottman v. Old Second Bancorp, Inc.*,
735 F. Supp. 2d 988 (N.D. Ill. 2010) ........................................................................12, 17, 22

*Salomon v. Adderly Indus., Inc.*,
847 F. Supp. 2d 561 (S.D.N.Y. 2012).....................................................................................21

*Santiago v. Amdocs, Inc.*,
No. 10-cv-4317, 2011 WL 6372348 (N.D. Cal. Dec. 19, 2011).............................................15

*Shaia v. Harvest Mgmt. Sub, LLC*,
306 F.R.D. 268 (N.D. Cal. 2015).............................................................................................21

*Sharpe v. APAC Customer Servs., Inc.*,
No. 09–cv–329–BBC, 2010 WL 135168 (W.D. Wis. Jan. 11, 2010) (Crabb, J.)........12, 13, 22

*Sjoblom v. Charter Commc'ns, LLC*,
No. 3:07-cv-0451-bbc, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007) (Crabb,
J.)..........................................................................................................................................12, 23

*Syed v. M-I, L.L.C.*,
No. 1:12–cv–01718 AWI MJS, 2014 WL 3778246 (E.D. Cal. Jul. 30, 2014) .................15, 16

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*,
No. 5:15–CV–330–RP, 2015 WL 7075971 (W.D. Tex. Oct. 5, 2015)...................................16

*Thomas v. HCC-High Capacity Coil, LLC*,
No. 2:14–CV–17, 2014 WL 4063981 (S.D. Tex. July 29, 2014) ...........................................16

*Thompson v. Peak Energy Servs. USA, Inc.*,
No. 13–0266, 2013 WL 5511319 (W.D. Pa. Oct. 4, 2013) ...............................................16, 24

*Villatoro v. Kim Son Rest., L.P.*,
    286 F. Supp. 2d 807 (S.D. Tex. 2003) ...................................................................21

*Williams v. Bally's La., Inc.*,
    No. 05-5020, 2006 WL 1235904 (E.D. La. 2006) ..................................................24

*Wischnewsky v. Coastal Gulf & Intern, Inc.*,
    No. 12–2277, 2013 WL 1867259 (E.D. La. May 2, 2013) ...................................16

*Witteman v. Wis. Bell, Inc.*,
    2010 WL 446033 (W.D. Wis. Feb. 2, 2010) (Crabb, J.) .......................................11

*Zubair v. EnTech Eng'g P.C.*,
    808 F. Supp. 2d 592 (S.D.N.Y. 2011).....................................................................7

*Zuber v. APC Natchiz, Inc.*,
    144 F. App'x 657 (9th Cir. 2005) ........................................................................7, 9

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 216(b), *et seq.* .......................................... *passim*

**Other Authorities**

29 C.F.R. § 541.203(g) ..............................................................................................8

29 C.F.R. § 541.203(j) ...............................................................................................9

29 C.F.R. § 778.112 ........................................................................................2, 3, 19

29 CFR § 541.205(c)(2) (2003) ..................................................................................9

29 CFR § 541.207(c)(2) (2003) ..................................................................................9

81 F.R. 32391, *32429 n.69 (May 23, 2016).........................................................7, 10

DOL Opinion Letter Fair Labor Standards Act, 1986 WL 1171119 (Aug. 11,
    1986) ...........................................................................................................9

DOL Opinion Letter Fair Labor Standards Act, 1987 WL 1369139 (Jan. 29, 1987).....................9

DOL Opinion Letter Fair Labor Standards Act, 1987 WL 1369152 (May 19,
    1987) ...........................................................................................................9

DOL Opinion Letter Fair Labor Standards Act, 1992 WL 845084 (Mar. 3, 1992).......................9

*"Executive, Administrative, Professional * * * Outside Salesman" Redefined,
    Wage and Hour Division, U.S. Department of Labor, Report and
    Recommendations of the Presiding* (1949) ..............................................................8

## I.   <u>INTRODUCTION</u>

Plaintiffs Eric Gundrum ("Gundrum") and Michael King ("King") bring this action on behalf of themselves and all similarly situated employees to recover unlawfully withheld overtime wages and related damages based on Defendant Cleveland Integrity Services, Inc.'s ("Defendant" or "CIS") violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b), *et seq.* ("FLSA"). Plaintiffs move to conditionally certify the following group of similarly situated employees so they may receive notice and have the opportunity to join this action:

> All current and former employees of Cleveland Integrity Services, Inc. ("CIS") who held the job title of inspector or a similar title ("Inspectors") in the United States in any workweek between three years prior to the date of the Court's Order and the present (the "FLSA Collective").

To date, five (5) Inspectors who worked for CIS in nine (9) states and on more than six (6) client projects have already joined this case, and support Plaintiffs challenging a common policy applicable to all Inspectors. Plaintiffs respectfully request that the Court authorize notice to be sent to the additional Inspectors identified in CIS' records, so that they may have the opportunity to join this action and thereby toll the statute of limitations on their FLSA claim.

The standard that Plaintiffs must meet under the FLSA for conditional certification is fairly lenient and only requires a modest showing that other individuals are similarly situated to the Plaintiffs. *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791-WMC, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013) (Conley, J.); *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006) (Crabb, J.).   At this early stage before discovery has been completed, the Court must merely determine whether CIS' employees were "victims of a common policy or plan that violated the law." *Berndt,* 2013 WL 3287599, at *6.

Plaintiffs easily satisfy this lenient burden. The Inspectors are all paid pursuant to a uniform day rate compensation plan that violates the FLSA on its face. Specifically, CIS does

not pay its Inspectors any overtime pay when they work more than forty hours in a workweek. The FLSA is clear that paying employees on a day rate basis does not excuse an employer's obligation to pay overtime when those employees work more than forty hours in a workweek. *See* 29 C.F.R. § 778.112 ("If the employee is paid a flat sum for a day's work … without regard to the number of hours worked in the day … and if he receives no other form of compensation for services … [h]e is then entitled to extra half-time pay … for all hours worked in excess of 40 in the work week."). In this case, all Inspectors are subject to this same common pay policy and practice, which is **not limited by geography, client or project**, and which Plaintiffs alleges violates the FLSA.  *See Fenley v. Wood Grp. Mustang, Inc.*, No. 2:15-cv-326, -- F. Supp. 3d --, 2016 WL 1059681, at *5 (S.D. Ohio Mar. 17, 2016) (conditionally certifying nationwide class of inspectors who were paid on a day rate basis); *Fenley v. Applied Consultants, Inc.*, No. 15-cv-259-MRH (W.D. Pa.) (Jun. 17, 2016 Final Approval Order) (Exhibit C) (finally certifying nationwide settlement class of day rate inspectors).

Moreover, all Inspectors are similarly situated in that they all 1) are subject to the same corporate reporting structure; 2) perform inspection work in the field; and 3) are scheduled to work and routinely work more than forty hours in a workweek. Plaintiffs have submitted CIS' timesheets, daily reports, and declarations from Opt-In Plaintiffs in support of this motion, which, at this early stage, is more than sufficient to satisfy the lenient standard for conditional certification. Notice should be issued on an expedited basis to promote the broad remedial purpose of the FLSA and prevent the wasting of viable claims for unpaid wages.[1] Accordingly,

---

[1] Plaintiffs respectfully request expedited treatment of this motion, as prompt judicial notice will give the Inspectors the opportunity to participate in this action while they still have claims that are not time-barred. *See Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 2690716, at *2 (E.D. Wis. July 2, 2008) (limiting defendant's extension to respond to plaintiff's motion for conditional certification as the "statute of limitations on the FLSA claims is three years and any

Plaintiffs respectfully request that the Court grant this Motion and enter the accompanying proposed Order conditionally certifying the proposed  FLSA Collective of Inspectors and approving Plaintiffs' plan of notice.

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Collective Action Complaint on June 2, 2016, alleging that CIS violated the FLSA by paying them and other employees on an unlawful day rate compensation plan without paying overtime when they worked over forty (40) hours per week. *See* Dkt. No. 1, Compl., ¶¶ 27 and 30; 29 C.F.R. § 778.112 (day rate regulation of the FLSA). Plaintiffs now move to conditionally certify and send notice of this action to a class of Inspectors, as defined above.  To date, seven (7) Inspectors, including Plaintiffs Eric Gundrum and Michael King, have filed Opt-In Consent Forms to join this action. *See* Dkt. Nos. 1, 2, and 4 ("Opt-In Consent Forms").

## III.   FACTUAL BACKGROUND

### A.   CIS Is A Third Party Inspection Company That Employs Similarly Situated Inspectors

CIS is a Cleveland, Oklahoma, based corporation that provides third party inspection services for the construction and maintenance of oil and natural gas transmission, midstream and gathering lines, facility construction, meter runs, and many other types of oil and gas construction throughout the United States. *See* Compl. ¶ 5. CIS is a subsidiary of Applied-Cleveland Holdings, Inc.[2] *Id.*

---

delay may result in additional claims being barred."). Without prompt notice of this case, potential opt-in Plaintiffs are prejudiced, because for those who worked three years ago, each day that passes without their having the opportunity to join ticks another day of damages off the clock.

[2] Applied- Cleveland Holdings, Inc. is also the parent company of another inspection company, Applied Consultants, Inc., which was the subject of a similar lawsuit brought by inspectors paid on a day rate basis, also represented by the undersigned counsel.  *See Fenley v. Applied*

Importantly for purposes of this Motion, while Plaintiffs and Opt-In Plaintiffs worked on multiple projects for CIS across nine (9) states, CIS still paid all of them pursuant to a uniform day rate compensation plan and policy. *See* Compl. ¶ 25; Opt-In Consent Forms. Further, Inspectors all work in the field rather than in CIS' corporate or regional offices, and all test and observe the pipeline construction, welding, and coating processes to ensure compliance with client specifications and industry standards. *See* Compl. ¶¶ 7, 20-23.

**B.    All Inspectors Are Subject To A Uniform Day Rate Compensation Policy**

      **1.    Inspectors Are Paid On A Day Rate Basis, Regardless of Their Job Title, Project Or Geographic Location**

Inspectors are subject to the same pay policy, by which they are uniformly denied overtime compensation in violation of the FLSA. While the amount of the day rate may vary by project, all Inspectors are paid on a day rate, and CIS is responsible for paying its Inspectors in compliance with the FLSA. *See* Comp. ¶¶ 25-26. Inspectors are all also eligible to receive a *per diem*, cell phone reimbursement, mileage, and equipment reimbursement. *See* Ex. D, CIS Form Timesheet, *available at* http://www.clevelandintegrity.com/pdf/time_sheet.pdf    (last visited June 8, 2016); *see also* Ex. E, Sample Timesheets for Eric Gundrum, Michael King, Jacob Carlson, and Donnie Hood ("Opt-In Timesheets").

Moreover, the timesheets, declarations from the two (2) Plaintiffs and four (4) of the Opt-In Plaintiffs demonstrate that Inspectors are paid pursuant to a day rate compensation

---

*Consultants, Inc.*, No. 15-cv-259-MRH (W.D. Pa.).  The parties entered into early settlement negotiations in *Applied Consultants*, and reached a class wide settlement for a Gross Settlement Amount of $9,250,000 on behalf of "all employees who have worked for Applied in a job paid on a daily rate basis in any workweeks between February 25, 2012 and the date of preliminary approval, except for individuals who held only jobs with titles of 'Project Manager' or containing the word 'Chief'; 'Administrative'; or 'Office,' except those individuals who have timely requested exclusion from the Settlement Agreement (the "Applied Settlement Class"). On June 16, 2016, the district court for the Western District of Pennsylvania finally certified the Applied Settlement Class and granted final approval to the Settlement.  *See* Ex. C (June 16, 2016 Applied Final Approval Order).

plan regardless of their job title, geographic location, or project. Plaintiffs and the Opt-In Plaintiffs performed work for CIS in nine (9) different states and for six (6) different pipeline projects. *See* Ex. F, Summary of Opt-In Plaintiffs. In joining this litigation, each Opt-In Plaintiff certified that he "worked for Cleveland Integrity Services, Inc. … and was paid on a day rate basis." *See* Opt-In Consent Forms ¶ 4. Plaintiffs and four Opt-In Plaintiffs have also confirmed that they worked on multiple client projects for CIS and were paid on a day rate basis for each project. *See* Ex. G, Declaration of Eric Gundrum ("Gundrum Decl.") ¶¶ 3, 6; Ex. H, Declaration of Michael King ("King Decl.") ¶¶ 3, 6; Ex. I, Declaration of Jacob Carlson ("Carlson Decl.") ¶¶ 3, 7; Ex. J, Declaration of Erasmo Enriquez ("Enriquez Decl.") ¶¶ 3-4; Ex. K, Declaration of Donnie Hood ("Hood Decl.") ¶¶ 3, 6; Ex. L, Declaration of Eric Malone ("Malone Decl.") ¶¶ 3-4.  In order to get paid, Inspectors must fill out the CIS Form Timesheet, which is used for all of CIS' clients, and provides spaces for the client's name and the client supervisor.  These forms are provided to all of CIS' employees on its website on the same page as other employment forms and policies. *See* Ex. M, Cleveland Integrity Services, Inc. Forms ("CIS Forms"), *available at* http://www.clevelandintegrity.com/index.php/forms (last visited June 9, 2016).

### 2.     All Inspectors Are Paid by the Number of Days Worked, Without Regard to Actual Hours Worked

Plaintiffs and Opt-In Plaintiffs report the number of days they work, without regard for the number of hours worked each day, on a timesheet provided by and returnable to CIS. *See* CIS Form Timesheet; Opt-In Timesheets; *see also* Ex.N, Paystubs for Eric Gundrum and Donnie Hood ("Opt-In Paystubs") (showing "Units" are days actually worked each workweek). Using the timesheets CIS provided to all of its Inspectors, including Plaintiffs and Opt-In Plaintiffs, Inspectors were to report whether or not they worked that day, but not the actual hours worked, by marking "W" for worked or "NW" for not worked. *Id.* This pay reporting policy is uniform

for all of CIS' clients as it is provided to all Inspectors via CIS' website with the other employment forms.

### C.      All Inspectors Perform Similar Job Duties

Despite any potential difference in specific Inspector job titles, Plaintiffs, the Opt-In Plaintiffs, and all Inspectors perform substantially similar duties. Inspectors test and observe pipeline construction, welding, and coating processes to ensure compliance with client specifications and industry standards. *See* Compl. ¶¶ 7; 16-17; 20; *see also* Ex. O, Daily Reports Completed by Eric Gundrum, Michael King, and Donnie Hood ("Opt-In Daily Reports"). In performing their work, Inspectors are required to utilize the "techniques and procedures obtained primarily from industry manuals, standards and codes." Comp. ¶ 22; *see also* Opt-In Daily Reports (provided by the client with an "Inspector's Checklist" of activities the Inspector is to review and ensure were complied with). Inspectors are expected to work within the closely prescribed limits provided by CIS and its clients, which are detailed in each daily report. Comp. ¶ 23; Opt-In Daily Reports. As part of the daily reports, Inspectors are required to provide step-by-step activities, including noting station points, footage, and listing land tract numbers. *See, e.g.*, Opt-In Daily Reports.

### D.      All Inspectors Routinely Work Far In Excess of Forty Hours Per Week

Inspectors routinely work far in excess of 40 hours per week, and yet, CIS does not pay them *any* overtime compensation. *See* Compl. ¶¶ 28-29; Gundrum Decl. ¶¶ 7-9; King Decl. ¶¶ 7-9; Carlson Decl. ¶¶ 8-10; Erasmo Decl. ¶¶ 5-7; Hood Decl. ¶¶ 7-9; Malone Decl. ¶¶ 5-7. Inspectors work approximately six (6) to seven (7) days per week, typically working on at least ten (10) hour shifts, up to fifteen (15) hours per day. *See* Compl. ¶¶ 28; Gundrum Decl. ¶ 7; King Decl. ¶ 7; Carlson Decl. ¶ 8; Erasmo Decl. ¶ 5; Hood Decl. ¶ 7; Malone Decl. ¶ 5.

While it is not seriously disputed that Inspectors work over forty hours per week on a

regular basis, CIS' timesheets do not track the number of hours that Inspectors work each day or each week. *See* CIS Form Timesheet; Opt-In Timesheets.

    **E.**    **CIS' Pay Plan Violates The FLSA**

Although not necessary for a determination of this motion at this early stage, CIS' common failure to pay Inspectors violates the overtime provisions of the FLSA. In the past decade, at least two different federal courts have determined that inspectors, including specifically pipeline inspectors, were non-exempt as a matter of law. *See Zuber v. APC Natchiz, Inc.*, 144 F. App'x 657 (9th Cir. 2005) (pipeline safety inspector was non-exempt as a matter of law); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 595 (S.D.N.Y. 2011) (holding chief inspector whose job responsibilities "included testing concrete and paint samples and recommending project improvements to the overall paint systems" was not exempt under the highly compensated employee exemption to the FLSA).

For over 60 years, the United States Department of Labor ("DOL"), through its reports, regulations, opinion letters, and internal handbook, has repeatedly made it clear its intent "to avoid the unintended exemption of employees who clearly are outside the scope of the exemptions and are entitled to the FLSA's minimum wage and overtime pay protections," which includes inspectors. *See* "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," Wage and Hour Division, Department of Labor Final Rule, 81 F.R. 32391, *32429 n.69 (May 23, 2016) ("DOL May 2016 Final Rule"). Indeed, beginning with the Weiss Report, issued by the DOL in 1949, inspectors were specifically identified as the type of employee who is not exempt under the duties tests of the administrative exemption:

> [A] supervisor who spot checks and examines the work of his subordinates to determine whether they are performing their duties properly, and whether the product is satisfactory, is performing work which is directly and closely related to his managerial and

supervisory functions. However, this kind of examining and checking must be distinguished from the kind which is normally performed by an "examiner", "checker", or "**inspector"** and which is really a **production** operation rather than a part of the supervisory function.

Ex. P, *"Executive, Administrative, Professional * * * Outside Salesman" Redefined, Wage and*

*Hour Division, U.S. Department of Labor, Report and Recommendations of the Presiding* (1949)

("Weiss Report"), p. 34.[3]

Similarly, the DOL's regulations have unwaveringly identified inspectors as the type of

employee not exempt under the administrative exemption. According to the current regulations,

the administrative exemption does not apply to inspectors:

> Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits.

29 C.F.R. § 541.203(g). The current regulations further state that "[p]ublic sector inspectors or

investigators of various types, such as fire prevention or safety, building or construction, health

or sanitation, environmental or soils specialists and similar employees, generally do not meet the

duties requirements for the administrative exemption because their work typically does not

involve work directly related to the management or general business operations of the

---

[3] *See also* Weiss Report, pp. 64 ("An inspector as, for example, for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related to management policies or general business operations" as that phrase is used here."); 66 ("A typical example of the application of skills and procedures is ordinary inspection work of various kinds. Inspectors normally perform specialized work along standardized lines involving well established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits.")

employer." 29 C.F.R. § 541.203(j).[4]

The pre-2004 regulations similarly made clear that inspectors were non-exempt. "An inspector, such as, for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be 'directly related to management policies or general business operations' as that phrase is used in § 541.2." 29 CFR § 541.205(c)(2) (2003). In fact, the pre-2004 regulations also specifically singled out inspectors as the type of employee not exempt under the administrative exemption. *See* 29 CFR § 541.207(c)(2) (2003). Consistent with the relevant regulations, the DOL has always concluded that inspectors are not performing "administrative" work.[5]

Moreover, in the Economic Report issued with the Preamble to the 2004 amendments to the § 541 Regulations, the DOL specifically identified inspectors as one of the "'blue collar' occupations that are most likely nonexempt under the current and final executive, administrative

---

[4] This "public sector" inspector regulation is also utilized in connection with comparable private sector inspectors. *See Zuber*, 144 F. App'x at 658 ("We must defer to the Department of Labor regulations interpreting the FLSA . . . Current regulations cite 'public sector inspectors or investigators' such as 'safety . . . specialists' as an example of those employees who do not fall under the administrative employee exemption because their duties are 'typically . . . not . . . directly related to the management or general business operations of the employer' and because their work involves 'the use of skills and technical abilities' as opposed to the exercise of discretion. . . . Although *Zuber* was an inspector in the private rather than the public sector, the record indicates that his duties were substantially similar to those described in the regulations as an illustration of a non-exempt employee."). Since 29 C.F.R. § 541.203(j) specifically references "construction inspectors" it is applicable to Plaintiffs.

[5] *See* DOL Opinion Letter Fair Labor Standards Act (FLSA), 1986 WL 1171119 (Aug. 11, 1986) (agricultural inspectors); DOL Opinion Letter Fair Labor Standards Act (FLSA), 1987 WL 1369152 (May 19, 1987) (fire prevention officers whose primary duty was building inspection); DOL Opinion Letter Fair Labor Standards Act (FLSA), 1987 WL 1369139 (Jan. 29, 1987) (zoning inspectors);. DOL Opinion Letter Fair Labor Standards Act (FLSA), 1992 WL 845084 (Mar. 3, 1992) (fire inspectors).

or professional exemptions." *Defining & Delimiting the Exemptions for Exec., Admin., Prof'l, Outside Sales & Computer Employees*, 69 FR 22,122, 22240 - 43 (Apr. 23, 2004) (OCC code 689/Inspectors, testers and graders; OCC code 796/Production inspectors, checkers and examiners). By the same token, the Bureau of Labor Statistics has specifically identified "inspector" as a "production occupation." U.S. Bureau of Labor Statistics, Production Occupations (March 29, 2012).[6]

The DOL's Field Operations Handbook repeatedly identifies inspectors as employees who are non-exempt. The Field Operations Handbook includes specific sections for "Inspectors" (§ 22i20), and "Inspectors or investigators – public sector" (§ 22i21), which make clear that non-supervisory inspectors do not meet the duties requirements for the administrative exemption. Ex. Q, DOL Field Operations Handbook §§ 22i20-22i21 (Nov. 29, 2010).

Finally, in the DOL's most recent Final Rule issued in May 2016, which increased the minimum salary to qualify for the highly compensated exemption, the DOL affirmed that even chief inspectors do not qualify for the highly compensated exemption. *See* DOL May 2016 Final Rule, at *32429 n.69 (favorably citing *Zubair*, 808 F. Supp. 2d at 600 (chief inspector who tested "concrete and paint sample and recommended project improvement to the overall paint systems" was not exempt)).

This historical background demonstrates how consistent the DOL has been in its position that inspectors perform non-exempt duties, even when a company pays its inspectors a salary (which CIS does not). CIS chose to ignore this unbroken line of authority and treat its Inspectors as exempt from the overtime provisions of the FLSA. The Court should promptly order that notice be issued in order to advise potential collective members of their right to join this lawsuit

---

[6] Available at http://www.bls.gov/ooh/production/print/home.htm (attached as Exhibit R).

and pursue their FLSA claims for non-payment of overtime.

## IV.   ARGUMENT

### A.   The Court Should Conditionally Certify The FLSA Collective of Inspectors For the Purpose of Facilitating Notice

Plaintiffs seek authorization to send Notice in this collective action pursuant to Section 216(b) of the FLSA, which provides that an action may be maintained against any employer "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The collective action mechanism allows for the efficient adjudication of similar claims so that "similarly situated" workers whose claims are often small and not likely to be brought on an individual basis may join together and pool their resources to prosecute their claims. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482 (1989).

The Supreme Court has observed that the benefits of a Section 216(b) collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170; *see also Witteman v. Wis. Bell, Inc.*, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) (Crabb, J.). District courts have a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-LaRoche*, 493 U.S. at 170-71. Consistent with this responsibility, the court can facilitate the notice and joinder process by "conditionally certifying" the lawsuit and enabling other current/former employees to be notified of its existence.

### 1.   This Court Applies A Two-Stage Certification Process

The Seventh Circuit has not established criteria for determining whether under the FLSA employees are 'similarly situated', but a majority of courts, including this Court, have adopted a

two-step process to determine whether conditional certification should be granted. *See Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-cv-592, 2013 WL 3287634, at *3 (W.D. Wis. Mar. 21, 2013) (Conley, J.); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628-29 (W.D. Wis. 2009) (Crabb, J.) (citing *Austin*, 232 F.R.D. at 605).[7] The two-step approach has since been applied to numerous FLSA actions in this District Court. *See, e.g.*, *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. July 25, 2014) (Conley, J.); *Freeman v. Total Sec. Mgmt-Wisc., LLC*, No. 12-cv-461-WMC, 2013 WL 4049542, at *3 (W.D. Wis. Aug. 9, 2013) (Conley, J.); *Berndt*, 2013 WL 3287599, at *6; *Espenscheid v. DirectSat USA, LLC*, No. 09–cv–625–BBC, 2010 WL 2330309, at *6 (W.D. Wis. June 7, 2010) (Crabb, J.); *Sharpe v. APAC Customer Servs., Inc.*, No. 09–cv–329–BBC, 2010 WL 135168, at *4 (W.D. Wis. Jan. 11, 2010) (Crabb, J.); *Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-cv-0451-bbc, 2007 WL 4560541, at *7 (W.D. Wis. Dec. 19, 2007) (Crabb, J.).

The first step is a "notice stage," where the court determines whether there are others similarly situated. The Plaintiff is required to provide "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Austin*, 232 F.R.D. at 605 (quoting *Young c. Cooper Cameron Corp.*, 229 F.R.D. 50, 52 (S.D.N.Y. 2005)). This is a lenient standard which "typically results in conditional certification of a representative class." *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010); *see also Cramer v. Bank of Am., N.A.*, No. 12-C-8681, 2013 WL 6507866, at *7 (N.D. Ill. Dec. 12, 2013) ("A plaintiff's burden at this stage is lenient in furtherance of a public policy that favors access to collective actions.").

---

[7] *See also Hatton v. Cablecom, LLC*, No. 14-cv-1459, 2015 WL 4113441, at *3 (E.D. Wis. July 8, 2015); *Bradley v. The Arc of NW Ind., Inc.*, No. 2:14-cv-204, 2015 WL 2189284, at *2 (N.D. Ind. May 11, 2015); *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 2690716, at *3 (E.D. Wis. July 2, 2008); *Jirak v. Abbott Lab., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

At this stage, a court decides whether to conditionally certify a class based "on the complaint and any affidavits that have been submitted. . .[and] Plaintiffs' materials are the proper focus at this preliminary stage, ***not*** defendants'." *Bitner*, 301 F.R.D. at 357-58 (citing *Austin*, 232 F.R.D. at 606) (emphasis added). "[T]he court resolves any factual disputes in plaintiffs' favor." *Bitner*, 301 F.R.D. at 358 (citing *Berndt*, 2013 WL 3287599, at *7); *see also Larsen v. Clearchoice Mobility, Inc.*, No. 11-C-1701, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011). The merits of Plaintiffs' claim are not to be evaluated at this stage. *Berndt*, 2013 WL 3287599, at *7. Rather the Court looks to whether there is "some factual nexus" between the plaintiff and the proposed class as victims of a common unlawful policy. *Id*.

In the second stage, which comes at the conclusion of discovery and often in the context of the Defendant's motion to decertify the class, a stricter standard applies to determine whether the case can proceed as a class action. *Id*.

**2.        Plaintiffs' Burden is Minimal at the Notice Stage**

As described above, Plaintiffs' burden at the notice stage is a lenient one, so that potential class members have an opportunity to decide whether they want to join the case and toll their statute of limitations. To be "similarly situated," each class member's situation need not be identical, but merely similar "even though there are distinctions in their job titles, functions, or pay." *Jirak*, 566 F. Supp. 2d at 848-49 (collecting cases).

Proof of a single decision, policy, or plan may be provided through the allegations of the complaint and declarations of Plaintiffs. *See Austin*, 232 F.R.D. at 606 (one declaration and the complaint are sufficient); *see also Bitner*, 301 F.R.D. at 359-60 (looking to the allegations of the complaint and plaintiff's submitted affidavits satisfied the minimal burden of showing a common unlawful policy necessary for conditional certification); *Sharpe*, 2010 WL 135168, at *6 ("Adducing evidence from a small percentage of the potential class does not preclude

13

conditional certification of a class under the FLSA"); *Kelly*, 256 F.R.D. at 630-631 (granting conditional certification based on the complaint and affidavits submitted by the plaintiffs).

Moreover, potential Opt-In Plaintiffs need not hold the same job title for purposes of issuing the first stage notice, nor be located at the same location. *See, e.g.*, *Allen v. City of Chic.*, No. 10-cv-3183, 2013 WL 146389, at *8 (N.D. Ill. Jan. 14, 2013) (a showing that potential class members have identical positions for conditional certification is unnecessary as "plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay") (internal citations omitted). At the conditional certification stage, where it is alleged that an unlawful policy is company-wide, "the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations." *Kelly*, 256 F.R.F. at 631 (noting same where no difference among sales representatives' job description or applicability of defendant's apparent company-wide policy across nation).

Courts in this Circuit routinely grant conditional certification on a nationwide basis. For example, in *Kelly*, this Court granted nationwide conditional FLSA certification and ordered that notice be sent to sales representatives who worked in 26 centers. 256 F.R.D. at 630. In so holding, the court rejected the defendant's argument that the plaintiffs' declarations from 4 service centers was not sufficient to conditionally certify a nationwide class of members in 26 service centers. *Id.* at 631 (holding "because there appears to be no difference among sales representatives' job description or the applicability of defendant's apparent company-wide policy across the nation, there is no reason to limit the class").

Similarly, in *Jirak*, the United States District Court for the Eastern District of Wisconsin

granted conditional FLSA certification and ordered that notice be sent to pharmaceutical representatives who worked nationwide, stemming from 6 different franchises, even though the representatives had some variations in their job duties. 566 F. Supp. 2d at 848. In so holding, the district court rejected the defendant's arguments that conditional certification is inappropriate where there are differences in job duties of putative class members. *Id.; see also Howard v. Cetrinex, LLC*, No. 15-cv-9918-JWL, 2016 WL 1701818, at *4 (D. Kan. Apr. 28, 2016) (refusing to limit the class definition at the conditional certification stage as plaintiff alleged a uniform practice of performing pre and post-shift work without compensation, no matter the differences in actual duties); *Beall v. SST Energy Corp.*, No. 15-cv-01741-MSK-NYW, 2016 WL 286295, at *2 (D. Colo. Jan. 25, 2016) (granting conditional certification based on the examination that the putative plaintiffs were affected by the same policy or error, not based on whether they share the same job duties); *Syed v. M-I, L.L.C.*, No. 1:12–cv–01718 AWI MJS, 2014 WL 3778246, at *6-7 (E.D. Cal. Jul. 30, 2014) (granting conditional certification to class of employees in oil and gas industry, including drilling fluid specialist positions I through IV and senior positions, over defendant's objections that job titles and duties differed); *Allen*, 2013 WL 146389, at *8 (conditionally certifying a class of officers who comprise 5 divisions within the department as the FLSA policy was uniform throughout the department); *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10-C-4763, 2011 WL 1548964, at *14 (N.D. Ill. Apr. 21, 2011) (conditionally certifying nationwide class of recruiters). [8]

Given this lenient standard, district courts routinely conditionally certify nationwide

---

[8] *See also Santiago v. Amdocs, Inc*., No. 10-cv-4317, 2011 WL 6372348 (N.D. Cal. Dec. 19, 2011) (conditionally certifying class of IT employees from different "job families" and who held different job "roles"); *Renfro v. Spartan Comput. Servs., Inc*., 243 F.R.D. 431, 434 (D. Kan. 2007) (conditionally certifying a class of field technicians and installers with numerous job titles); *Pivonka v. Bd. of County Comm'rs*, No. 04-cv-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (conditionally certifying class of paramedics, lieutenants and captains).

FLSA Collectives of employees in the oil and gas industry, including those who are paid on a day rate basis. *See, e.g.*, *Fenley*, 2016 WL 1059681, at *5 (conditionally certifying nationwide class of inspectors who were paid on a day rate basis); *Casarotto v. Expl. Drilling, Inc.*, No. 15-cv-41-BLG-SPW-CSO, 2015 WL 6080755, at *4 (D. Mont. Oct. 15, 2015) ("*Casarotto I*") (conditionally certifying nationwide class of flowback operators who were paid on a day rate basis), *report and recommendation adopted Casarotto v. Expl. Drilling, Inc.*, 2015 WL 8780050 (D. Mont. Dec. 15, 2015) ("*Casarotto II*"); *see also Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15–CV–330–RP, 2015 WL 7075971, at *7 (W.D. Tex. Oct. 5, 2015) (conditionally certifying a class of day rate employees); *May v. E&J Well Serv., Inc.*, No. 14–cv–00121–RBJ, 2014 WL 2922655, at *2 (D. Colo. June 27, 2014) (granting conditional certification to [a]ll current and former workers who performed flow testing services or performed similar duties at oil and gas wells serviced by [d]efendants"); *Thomas v. HCC-High Capacity Coil, LLC*, No. 2:14–CV–17, 2014 WL 4063981, *5 (S.D. Tex. July 29, 2014) (granting conditional certification to class of "all non-managerial field personnel … who received day rate job bonuses but were not paid overtime").[9] The recent precedent should be

---

[9] *See Syed*, 2014 WL 3778246 (granting conditional certification of class of various positions of drilling fluid specialists); *Hart v. Sandridge Energy, Inc.*, No. CIV–14–178–R, 2014 WL 2983358, at *2 (W.D. Okla. July 1, 2014) (granting conditional certification to class of oilfield workers under the positions of "Floor Hand," "Derrick Hand," "Motor Hand," or "Driller"); *Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) (granting conditional certification to class of "Air Compression Supervisors," "Air Supervisors," "Compression Supervisors," or "Pushers" misclassified as exempt); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640 (W.D. Tex. 2013) (granting conditional certification to class of safety coordinators); *Thompson*, 2013 WL 5511319 (granting conditional certification to class of solids control technicians paid a salary plus day rate); *Bland v. Calfrac Well Servs. Corp.*, No. 2:12–cv–01407, 2013 WL 4054594 (W.D. Pa. Aug. 12, 2013) (granting conditional certification to class of "all field operators and supervisors, including fracturing, cement and coil operators and supervisors"); *Anderson Perforating, Ltd.*, No. SA–13–CV–148–XR, 2013 WL 3356046 (W.D. Tex. July 3, 2013) (granting conditional certification to class of operators or riggers); *Wischnewsky v. Coastal Gulf & Intern, Inc.*, No. 12–2277, 2013 WL 1867259 (E.D. La. May 2,

followed and the FLSA Collective should be certified here.

### 3. Plaintiffs' FLSA Claim Should Be Conditionally Certified

Applying the above principles, the Court should find that Plaintiffs have met their lenient burden of demonstrating that Inspectors are similarly situated and order that notice be issued promptly so all individuals have a chance to opt-in to the action and toll the statute of limitations on their claims. Based on the Complaint, the declarations of Plaintiffs and Opt-In Plaintiffs, CIS timesheets, daily reports, and paystubs, Plaintiffs have met and exceeded their lenient burden of demonstrating that the proposed collective of Inspectors are sufficiently similarly situated to justify issuing notice to the proposed FLSA Collective.

*First*, prompt notice to potential Opt-In Plaintiffs is consistent with the Supreme Court's teachings in *Hoffman-LaRoche* and furthers the legislative purpose of both Section 216(b) and the FLSA. *See* Section IV(A).

*Second*, because the statute of limitations for the FLSA claims of potential opt-in Plaintiffs is not tolled by the filing of Plaintiff's Complaint, delay in notifying the FLSA Collective Members will seriously prejudice their claims. This weighs heavily in favor of early notification. *See Adair*, 2008 WL 2690716, at *2; *see also Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into FLSA collective action . . . objectives to be served through collective action justify conditional certification of a class of putative plaintiffs early in the proceeding, typically before any significant discovery, upon initial showing that members of the class are similarly situated.").

*Third*, although the parties have not yet conducted discovery, the record already contains

---

2013) (granting conditional certification to class of oil, gas and chemical surveyors and inspectors).

substantial allegations that Inspectors are similarly situated and that they are the victims of a single decision, policy or plan to misclassify them as exempt and deny them overtime pay. Specifically, the Inspectors: 1) are all paid pursuant to a day rate compensation plan; 2) are subject to the same corporate reporting structure; 3) perform inspection work in the field; 4) all routinely work more than forty hours per week; 5) are all uniformly classified as exempt from the FLSA, based on the same pay plan; 6) are all subject to the same policies concerning recording the days that they work but not the times that they work; and 7) do not receive any overtime pay. Accepting these allegations and evidence, as must be done at this early stage, Plaintiffs have more than met their burden of demonstrating that Inspectors are similarly situated for purposes of issuing notice, and Plaintiffs' Motion should be granted. *See Berndt*, 2013 WL 3287599, at *9 ("On plaintiff's proffered evidence, it would be at least reasonable to infer that there may have been a common plan, policy or instruction linking the regions together . . . [and a]ccordingly, the court will certify a company-wide class.").

### 4. Day Rate Cases Like This One Are Appropriate And Well-Suited For Conditional Certification

Federal courts around the country often grant motions for conditional certification on behalf of classes of employees who are paid on a day rate compensation system. Indeed, two recent decisions in day rate cases are of particular significance: *Fenley* and *Casarotto*. For the reasons discussed herein, the Court should find these actions to be instructive and conditionally certify Plaintiffs' proposed nationwide FLSA Collective.

In *Fenley*, the United States District Court for the Southern District of Ohio conditionally certified a nationwide class of pipeline inspectors whom plaintiff alleged were paid on a day rate basis. Just as Plaintiff has done here, in *Fenley*, plaintiff alleged: 1) that the defendant maintained a common day rate pay policy that was not limited by geography, client, or project; 2) that all

potential collective members work within the same business unit, department, and job family; 3) that all potential collective members were subject to the same corporate reporting structure; and 4) that all potential collective members were routinely scheduled to work -- and did work -- more than 40 hours per week. *Fenley*, -- F. Supp. 3d --, 2016 WL 1059681, at *3.

Similarly, in *Casarotto I*, Magistrate Judge Ostby recommended that the United States District Court for the District of Montana conditionally certify a collective group of day rate employees whom Plaintiff Casarotto alleged "1) were employed as flowback operators by Exploration; 2) performed similar duties; 3) had primary duties of assisting in the operation and monitoring of oil wells; 4) regularly worked overtime; 5) performed the same core job functions while being treated (and paid) by Exploration in the same manner; and 6) were denied overtime pay by Exploration due to their misclassification." *Casarotto I*, 2015 WL 6080755, at *1. In adopting the Report and Recommendation and granting conditional certification, the district court held that "Casarotto has provided substantial allegations that he and other flowback operators were subjected to a policy that violated the FLSA . . . alleg[ing] that he routinely was required to work over 40 hours per week without receiving any overtime pay. . . Given the lenient standard at the first step, Casarotto met his burden of showing that he and the putative class members are similarly situated for purposes of § 216(b)." *Casarotto II*, 2015 WL 8780050, at *2.

Here, Plaintiffs presented evidence that CIS violated the FLSA, namely, the payment that CIS paid its Inspectors a day rate without paying overtime compensation, in violation of 29 C.F.R. § 778.112. The evidence presented demonstrates that Inspectors are subject to the same compensation policy, under which they are paid pursuant to a non-salaried day rate compensation system that does not provide for proper overtime compensation for hours worked

over 40 per week. *See* Compl. ¶ 29; Gundrum Decl. ¶ 8; King Decl. ¶ 8; Carlson Decl. ¶ 9; Erasmo Decl. ¶ 7; Hood Decl. ¶ 9; Malone Decl. ¶ 7; Opt-In Paystubs. The Court should conditionally certify the requested Collective here, because Plaintiffs' evidence demonstrates that all Collective Members are similarly impacted by CIS' common pay plan.

   **B.      CIS' Forced Arbitration Agreement Should Not Preclude Notice**

   Plaintiffs anticipate that CIS will argue that notice is inappropriate because some or all of the Inspectors were required to sign an arbitration agreement as a condition of their employment. As a primary matter, these agreements are unenforceable pursuant to the Court of Appeals for the Seventh Circuit's recent decision, which struck down an arbitration agreement in a wage and hour class and collective action as violating Sections 7 and 8 of the National Labor Relations Act ("NLRA"). *See Lewis v. Epic Sys. Corp.*, No. 15-2997, --- F.3d ---, 2016 WL 3029464, at *10 (7th Cir. May 26, 2016), *aff'g*, No. 15-cv-82-bbc, 2015 WL 2330300 (W.D. Wis. Sept. 11, 2015) (Crabb, J.) ("Because it precludes employees from seeking any class, collective, or representative remedies to wage-and-hour disputes, Epic's arbitration provision violates Sections 7 and 8 of the NLRA."). To the extent CIS seeks to compel arbitration, the Seventh Circuit's precedent requires that such a request be denied.

   Moreover, the existence of an arbitration agreement has no bearing on the instant motion. Indeed, district courts across the country have routinely declined to address arbitration issues in adjudicating motions for FLSA conditional certification. *See, e.g., Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("courts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination'") (citations omitted). The determination at this first stage, conditional certification process focuses on whether putative class members were all subject to the same unlawful pay practices. As previously stated above, the employer's merits and defenses

are not appropriately determined at the first stage of certification. *See, e.g.*, *Woods v. Club Cabaret, Inc.*, No. 1L15-cv-01213-JEH, -- F. Supp.3d --, 2015 WL 6444793, at *5 (C.D. Ill. Sept. 28, 2015) ("any issues related to opt-in plaintiffs with arbitration agreements can be addressed at step-two of the class certification process," not at conditional certification stage); *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015) ("Nor does the fact that some of the contracts have arbitration provisions, simplified or not, create any differences between plaintiffs and other entertainers with respect to whether defendants violated the FLSA.").[10]

The fact that CIS may have forced its employees to sign arbitration agreements does not impact the Court's determination that its Inspectors are similarly situated and should be provided

---

[10] *See also Racey v. Jay-Jay Cabaret, Inc*., No. 15-cv-8228, 2016 WL 3020933, *5 (S.D.N.Y. May 23, 2016) ("[C]ourts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination.") (citing cases); *Shaia v. Harvest Mgmt. Sub, LLC*, 306 F.R.D. 268, 276 (N.D. Cal. 2015) ("The question whether certain employees are precluded from participating as members of the collective action by virtue of the arbitration/settlement agreements is not properly before the court at this first stage of the certification."); *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 685 n.7 (D.N.J. 2014) ("That some service technicians have signed arbitration agreements does not preclude conditional certification of all service technicians across the United States."); *Bowman v. Doe Run Res. Corp.*, No. 4:13-cv-2519-CDP, 2014 WL 3579885, at *5 (E.D. Mo. July 21, 2014) (holding that "the existence of arbitration agreements is irrelevant to class certification") (citations omitted); *Amrhein v. Regency Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("the potential for arbitration will not forestall the Plaintiffs' entitlement to conditional certification"); *Salomon v. Adderly Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) (for conditional certification, the relevant issue "is not whether Plaintiffs and [potential opt-ins] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay") (citation and internal quotation marks omitted); *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005) ("courts have certified collective actions even though putative class members have executed arbitration agreements"); *Pontius v. Delta Fin. Corp.*, No. 04-1737, 2005 WL 6103189, at *4 (W.D. Pa. June 24, 2005) ("Nor should employees be excluded at this early stage because they . . . have signed agreements containing arbitration clauses. Rather, notice and an opt-in opportunity should be broadly given . . ."); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (Defendant's objections with regard to the arbitration agreement "go to the merits of the action or the forum in which these claims ultimately should be resolved, not whether notice to potential claimants should be given.").

notice of their rights under the FLSA.

### C. Plaintiffs' Proposed Notice Is Accurate And Informative, And The Notice Plan Should Be Approved

Plaintiffs' proposed Notice and Opt-In Consent Form (attached as Exhibits A and B) meet the criteria for accurate notice that the Supreme Court envisioned in *Hoffman-LaRoche*, 493 U.S at 170. As required, the Notice is "timely, accurate, and informative." *See Hoffman-LaRoche*, 493 U.S. at 172. The proposed Notice and Opt-In Consent Form achieve the ultimate goal of providing the FLSA Collective Members with accurate and timely notice concerning the pendency of this action and should be approved.

Plaintiffs request that the Court approve the use of a "Notice Administrator" in this case, paid for by Plaintiffs, to administer and oversee the mailing of the Notice and Opt-In Consent Form to the FLSA Collective. Plaintiffs propose that, to be timely, potential opt-in Plaintiffs must return their signed Opt-In Consent Forms to Plaintiffs' counsel or the Notice Administrator postmarked within ninety (90) days after the date on which the Notice and Opt-In Consent Forms are initially mailed. Courts in this circuit have approved opt-in periods up to 120 days. *See Berndt*, No. 3:11-cv-791, Order (W.D. Wis. Feb. 1, 2013) (ECF No. 118) (75 days); *Rottman*, 735 F. Supp. 2d at 994 (90 days); *Anyere w. Wells Fargo, Co., Inc.*, No. 09-C-2769, 2010 WL 1542180, at *4 (N.D. Ill. Apr. 12, 2010) (120–day opt-in period); *Sharpe*, 2010 WL 1292154, at *2 (holding that 60–day opt-in period was sufficient); *Kelly*, 256 F.R.D. at 632 (90–day opt-in period); *see also Fenley*, 2016 WL 1059681, at *8 (granting 90-day opt-in period). The Opt-In Consent Forms will be deemed filed upon receipt by the Notice Administrator or Plaintiffs' counsel, and Plaintiffs' counsel will submit the Opt-In Consent Forms to the Court on an ongoing weekly basis and no later than two weeks after the end of the 90-day notice period.

In order to facilitate this Notice and fulfill the broad remedial purposes of the FLSA,

Plaintiffs additionally request that the Court order that Notice should be provided by both mail and email,[11] and that a duplicate copy of the Notice be sent as a reminder forty-five (45) days after the initial mailing to those Inspectors who have not yet opted in.[12] In addition, because of the nature of the jobs in which the potential opt-in Plaintiffs work, which require them to be away from their homes for months on end and because many may not receive their mail, or will not receive it on a timely basis, Plaintiffs request that Notice also be emailed to putative FLSA Collective Members, and Opt-In Consent Forms may be submitted via regular mail, electronic mail, facsimile, or online through an electronic signature service that will be established by Plaintiffs or the Notice Administrator. Further, Plaintiffs request that CIS be required to post a copy of the Notice in appropriate, conspicuous, visible and accessible places at each of its

---

[11] *See e.g.*, *Sjoblom*, No. 07–cv–451–bbc, Order (W.D. Wis. Mar. 7, 2008) (Dkt. No. 242), attached as Exhibit S; *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 4019424, at *3 (D. Nev. Nov.19, 2009); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128–29 (N.D. Cal. 2009); *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-1587-RLH-PAL, 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008).

[12] *See, e.g., Lewis v. Huntington Nat'l Bank*, No. C2-11-cv-0058, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *Phelps v. MC Comm'cs, Inc.*, No. 2:11-cv-00423-PMP-LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees."). Given the FLSA's remedial purpose and the goal of transmitting the notice to as many asserted class members as possible, email is an important alternative method and, indeed, "[t]here is no sound reason not to do so here." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *Denney v. Lester's, LLC*, No. 4:12-cv-377-JCH, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.*, No. 4:11-cv-1107-CEJ, 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012)). With regard to the use of email to notify potential plaintiffs of this litigation, "communication through email is [now] the norm." *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11-cv-2461-RMB-THK, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012); *Lewis*, 669 F. Supp. 2d at 1131 (permitting notice by first-class mail and email because many of the putative class members are "likely to be … comfortable communicating by email.").

offices, shops, trailers, or other locations in which Inspectors currently work, during the 90 day notice period. *See Bitner*, 30 F.R.D. at 362; *Thompson v. Peak Energy Servs. USA, Inc.*, No. 13–0266, 2013 WL 5511319, at *3 (W.D. Pa. Oct. 4, 2013) (ordering posting of the notice in the workplace in an oil and gas FLSA case due to the nature of the jobs, where opt-in plaintiffs typically work away from home for long periods of time); *Freeman*, 2013 WL 4049542, at *11; *Fosbinder-Bittorf*, 2013 WL 3287634, at *7.

Similar notice plans have be approved in similar cases by federal district courts. *See, e.g.*, *Williams v. Bally's La., Inc.*, No. 05-5020, 2006 WL 1235904, at *3 (E.D. La. 2006) (180-day opt-in period from order granting notice, with two weeks for defendant to provide names and addresses); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 482-83 (E.D. La. 2006) (180-day opt-in period, with approximately 26 days for defendant to provide names and addresses); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492 (E.D. Cal. 2006) (finding that first class mail, combined with posting, provided for the "'best notice practicable' to the potential class"); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards reasonable).

## V.     **CONCLUSION**

Plaintiffs have met their burden of demonstrating that they and other Inspectors are similarly situated for purposes of the FLSA, and thus conditional certification and judicial notice are warranted. Based upon the reasons set forth above, Plaintiffs respectfully request that this motion be granted and that Plaintiffs' proposed Notice be approved.

Dated: June 27, 2016                          Respectfully submitted,

                                              /s/ Sarah R. Schalman-Bergen
                                              Shanon J. Carson
                                              Sarah R. Schalman-Bergen
                                              Alexandra K. Piazza
                                              Camille Fundora

BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net
cfundora@bm.net

*Attorneys for Plaintiffs and the Proposed FLSA
Collective*